# Exhibit C

Judgment issued against Mr. McCullah
in New Zealand Action

**IN THE HIGH COURT OF NEW ZEALAND**
**CHRISTCHURCH REGISTRY**

**I TE KŌTI MATUA O AOTEAROA**
**ŌTAUTAHI ROHE**

CIV-2023-409-97
[2023] NZHC 2230

|  |  |  |
|---|---|---|
| IN THE MATTER | | of a claim under the Defamation Act 1992 |
| BETWEEN | | STEPHEN ANDREW JAMES McCULLAH<br>Plaintiff |
| AND | | DANNY JAMES DE HEK<br>First Defendant |
| AND | | DANNY : DE HEK LIMITED<br>Second Defendant |

| | |
|---|---|
| Hearing: | On the papers |
| Counsel: | B I Hood for Plaintiff<br>P A McKnight and A J Romanos for Defendants |
| Judgment: | 17 August 2023 |

---

## JUDGMENT OF ASSOCIATE JUDGE PAULSEN

---

This judgment was delivered by me on 17 August 2023 at 2.30 pm
pursuant to Rule 11.5 of the High Court Rules

Registrar/Deputy Registrar
Date:

McCULLAH v DE HEK [2023] NZHC 2230 [17 August 2023]

[1]     The plaintiff resides in the United States of America and describes himself as an entrepreneurial chief executive officer of companies operating internationally within the finance and investment sector.

[2]     The first defendant is the director of the second defendant and engages in dropshipping electronics and providing web-hosting and related consultancy services. He is also active in exposing what he regards as scams in the cryptocurrency space. He says this work brought the plaintiff to his attention and he has posted videos to YouTube about the plaintiff and his activities.

[3]     The plaintiff commenced this proceeding against the defendants seeking compensatory and exemplary damages along with injunctive relief in respect of the YouTube videos.  There were seven causes of action for defamation in the statement of claim, and in respect of each cause of action $500,000 as compensatory damages and injunctive relief were sought.  In respect of the fifth, sixth and seventh causes of action, exemplary damages of either $100,000 or $150,000 were also sought.  In addition, the plaintiff made claims for interest on damages awarded and costs.

[4]     The defendants filed statements of defence and pleaded affirmative defences of truth, honest opinion, qualified privilege, insufficient reputational harm and responsible public interest communication.  The second defendant also pleaded an additional defence of non-publication.

[5]     At the same time, the defendants applied for security for costs and an order for stay until the plaintiff provided security.  The defendants' application for security for costs was set down to be heard on 22 June 2023.  On the morning of the hearing, the plaintiff filed a notice of discontinuance against both defendants.

[6]     The first defendant is seeking costs against the plaintiff as all costs have been incurred in his name.  He is in receipt of legal aid, but there is no suggestion this affects his entitlement to an award of costs in this proceeding.[1]

---

[1]     David Bullock and Tim Mullins *The Law of Costs in New Zealand* (LexisNexis, Wellington, 2022) at [2.39].

[7] Consistent with this, in *Body Corporate No. 207715 v McNish*, Katz J said:[2]

> No order for costs can be made *against* a legally aided person unless the Court is satisfied that there are exceptional circumstances. A legally aided party who succeeds in litigation, however, is entitled to costs. The fact that a legally aided person may have been charged at rates less than those contemplated by Schedule 2 to the High Court Rules (as must have been the case here) does not justify a reduction in the costs awarded to that party, provided that the costs award does not exceed the actual costs incurred. As a general rule a successful legally aided party is entitled to the full sum of the legal aid grant, provided this is the same or less than the appropriate costs award calculated on a scale basis.

> (footnotes omitted)

[8] The first defendant applies for indemnity costs on the basis the proceeding was a "gagging writ" and a vexatious proceeding that the plaintiff never intended to take to a hearing. In the alternative, he seeks a substantial uplift on scale costs, or, as a final alternative, scale costs.

[9] The plaintiff argues no costs should be awarded but that if costs are awarded they should be 2B scale costs.

**The law**

[10] The starting point is r 15.23 of the High Court Rules 2016 which provides:

> Unless the defendant otherwise agrees or the court otherwise orders, a plaintiff who discontinues a proceeding against a defendant must pay costs to the defendant of and incidental to the proceeding up to and including the discontinuance.

[11] All issues of costs are discretionary, but the discretion must be exercised on a principled basis.[3] However, r 15.23 establishes an obligation on a plaintiff who discontinues that he or she must pay costs to the defendant, unless the defendant otherwise agrees or the Court otherwise orders.[4] The presumption is designed to give a predictable outcome upon discontinuance. It avoids any requirement for the

---

2   *Body Corporate No. 207715 v McNish* [2016] NZHC 475 at [4] citing *Taunoa v Attorney-General (compensation)* (2004) 8 HRNZ 5 at [45]; and *O'Neill v O'Neill* [2021] NZHC 450 at [17].
3   High Court Rules 2016, r 14.1.
4   *Yarrall v Earthquake Commission* [2015] NZHC 1451, at [16], upheld on appeal in *Yarrall v Earthquake Commission* [2016] NZCA 517, (2016) 23 PRNZ 765 at [12]; and *Earthquake Commission v Whiting* [2015] NZCA 144, (2015) 23 PRNZ 411 at [63].

defendant to demonstrate that the plaintiff acted unreasonably in filing and then discontinuing a proceeding.

[12] Circumstances where the Court has been persuaded the presumption should not apply include where the proceeding has been rendered redundant because of some intervening governmental or third-party decision, or where the defendant's acts or omissions caused the litigation and then rendered it unnecessary.[5] Those specific circumstances do not apply in this case.

[13] Indemnity costs depart from the predictability of the costs regime and are considered exceptional.[6] There is a high threshold that must be crossed before the Court will order indemnity costs. Generally, it must be shown that a party has behaved very badly or very unreasonably, which will include circumstances where a party has commenced proceedings for an ulterior motive. That is what the first defendant alleges here when he submits the proceeding was commenced as a gagging writ.

[14] The authors of the *Law of Torts in New Zealand* note that the term "gagging writ" is used to describe a claim filed with little or no intention of ever bringing the matter to trial, its purpose being to stifle further publication of allegedly defamatory material.[7] It is said that, particularly in a media context, this can have a chilling effect on further publication of relevant subject matter.

[15] The Defamation Act 1992 contains several provisions which, taken cumulatively, are intended to respond to and supress the practice of issuing a gagging writ. These are:

    (a) Plaintiffs suing media defendants are forbidden from specifying in their statement of claim the amount of damages they are claiming (s 43(1)).

    (b) A defamation claim may be struck out which has lain dormant for a year or more where no date has been fixed for the trial (s 50(1)).

---

[5]    *Earthquake Commission v Whiting*, above n 5, at [69].
[6]    *Bradbury v Westpac Banking Corp* [2009] NZCA 234, [2009] 3 NZLR 400 at [28].
[7]    Stephen Todd (ed) *Todd on Torts* (8th ed, Thomson Reuters, Wellington, 2019) at [16.15].

(c)     If a plaintiff claims a sum of money which, in the Judge's opinion, is grossly excessive and is eventually awarded less than that, the Judge may award the defendant solicitor and client costs (s 43(2)).

(d)     The commencement of a defamation proceeding will be deemed to be vexatious if, when the proceeding is commenced, the plaintiff has no intention of proceeding to trial (s 45).

[16]     The first defendant's claim to indemnity costs is founded upon r 14.6(4)(a) of the High Court Rules and s 45 of the Defamation Act.  Relevantly, r 14.6(4)(a) permits indemnity costs to be awarded if it has found a plaintiff "acted vexatiously, frivolously, improperly, or unnecessarily in commencing … a proceeding".

[17]     Section 45 of the Act provides as follows:

**45     Proceedings deemed to be vexatious if no intention to proceed to trial**

The commencement of proceedings to recover damages for defamation shall be deemed to be a vexatious proceeding if, when those proceedings are commenced, the plaintiff has no intention of proceeding to trial.

[18]     The first defendant also relies upon s 43 as part of the context against which the application of s 45 is to be considered.  It provides:

**43     Claims for damages**

(1)     In any proceedings for defamation in which a news medium is the defendant, the plaintiff shall not specify in the plaintiff's statement of claim the amount of any damages claimed by the plaintiff in the proceedings.

(2)     In any proceedings for defamation, where—

(a)     judgment is given in favour of the plaintiff; and

(b)     the amount of damages awarded to the plaintiff is less than the amount claimed; and

(c)     in the opinion of the Judge, the damages claimed are grossly excessive,—

the court shall award the defendant by whom the damages are payable the solicitor and client costs of the defendant in the proceedings.

[19]    *Michaels v APN New Zealand Ltd* concerned a claim in defamation which was struck out for failure by the plaintiff to file proper particulars.[8] The defendant sought indemnity costs because, it said, the plaintiff brought the claim for the ulterior purpose of preventing the defendant from continuing to publish material about an investigation of the plaintiff and his business activities by the Serious Fraud Office and without any intention to pursue the claim.

[20]    Associate Judge Abbott noted the Court's power to award indemnity costs under r 14.6(4) and the general principles on which the Court approaches such an application reviewed in *Bradbury v Westpac Banking Corp*.[9] He also noted s 45 of the Defamation Act.  He found there is a clear legislative intent in s 43(2) of the Defamation Act that defamation proceedings are not to be used unreasonably.[10] He was satisfied that the case before him came within the provision in s 45 and r 14.6(4)(a) as a vexatious proceeding brought to stifle further publication and without intention to take the case to trial.[11]

[21]    The matters relied upon by the Associate Judge included that the plaintiff, through his solicitor, had acknowledged that the proceeding had been prepared hurriedly in anticipation of further publications about him in the *New Zealand Herald*. The acknowledgement came in a letter responding to the defendant's solicitors pointing out deficiencies in the pleading, which made it untenable, and inviting the plaintiff to discontinue.[12] The Associate Judge considered it was a reasonable inference from this acknowledgement that the proceeding was issued to prevent further publication and further support could be found in the plaintiff's failure to prosecute his claim assiduously.[13]

**My assessment of this case**

[22]    A defendant seeking indemnity costs in reliance upon s 45 of the Act will often face a difficulty in proving that at the time the plaintiff commenced the defamation

---

8       *Michaels v APN New Zealand Ltd* HC Auckland CIV-2009-404-6071, 18 May 2010.
9       At [5]–[6] citing *Bradbury v Westpac Banking Corp* (2008) 18 PRNZ 859 (HC).
10      At [11].
11      At [12].
12      At [9].
13      At [10].

proceeding they had no intention of taking it to trial.[14] A plaintiff is unlikely to express any such intention as that would defeat the point of the proceeding. The existence of the intention then must be inferred from the circumstances of the case. Here, I am satisfied the first defendant has established the plaintiff never had any intention to take this proceeding to trial for several reasons.

[23] First, it is notable that the plaintiff's decision to discontinue came very quickly after he commenced the proceeding. The proceeding was filed on 9 March 2023 and was discontinued three months and 13 days later, on 22 June 2023.

[24] The decision to discontinue, and so quickly, must be viewed in the context that the defendants had shortly before, on 10 May 2023, filed their statements of defence (including the defence of truth) and an application for security for costs. The defendants' application for security for costs was strong, and the defendants' solicitors had made it clear the defendants relished the prospect of a trial on the plaintiff's claims and there was no prospect of a compromise.

[25] Third, it is apparent from correspondence that the proceeding was not issued to vindicate the plaintiff's reputation or obtain compensation for damage caused but to stifle further publications by the defendants. It is also apparent the plaintiff seriously miscalculated as to the defendants' resolve to defend their positions.

[26] The first correspondence sent by the plaintiff's solicitors was a cease and desist letter dated 22 December 2022 that was ignored by the defendants. After the proceeding was commenced, the defendants' solicitors wrote to the plaintiff's solicitors on 6 April 2023 raising the issue of security for costs. The correspondence that followed shows the plaintiff's concerns were about further publications by the defendants and avoiding costs. It is also clear that he would not contemplate the prospect of advancing the case to a hearing. Specifically:

---

[14]     Ursula Cheer *Burrows and Cheer Media Law in New Zealand* (8th ed, LexisNexis, Wellington, 2021) at 106.

(a) On 1 May 2023, the plaintiff offered to withdraw the claim with no costs if material was removed from the internet and undertakings given not to defame or harass him in the future.

(b) Following the filing of the defendants' statement of defence and application for security for costs, on 23 May 2023 the plaintiff's solicitors sought to "pause" the proceeding.

(c) On 19 June 2023, the plaintiff's solicitors proposed to discontinue without costs.

(d) On 20 June 2023, the plaintiff's solicitors proposed the plaintiff would pay costs of $22,000 if the defendants removed offending material and ceased harassing the plaintiff.

(e) When all offers were rejected, the plaintiff simply discontinued.

[27] The plaintiff contends that between him bringing the proceeding and his offers to discontinue there were material changes in circumstances that need to be taken into account. These were that the first defendant had been granted legal aid, had indicated a lack of willingness to settle, had filed an inflammatory affidavit and sought security for costs. A similar position was taken in correspondence. In a letter of 19 June 2023, the plaintiff's solicitors referred to the first defendant's grant of legal aid, that it was unlikely that the defendants would meet an award of costs or damages and said:

> 5. Despite the seriousness of the allegations Mr McCullah has reached the clear view that it is not possible for him to obtain justice in New Zealand [in] relation to Mr de Hek's internet bullying of him and his family.
>
> 6. For the above reasons [Mr] McCullah is prepared to discontinue the proceeding on the basis that each party bear their own costs.

[28] The assertion the plaintiff could get no justice is difficult to understand. Regardless of the financial considerations, the proceeding offered him the opportunity to vindicate his reputation and receive the injunctive relief that he sought. It is not correct, as he now submits, that he made offers to settle based on the removal of

offending material because "that was his only conceivable remaining remedy if he had seen the proceeding through".

[29] The next matter is the amount claimed by the plaintiff as damages. In total the statement of claim seeks damages of $3.85 million. There was never any prospect of recovering anything like that sum. It is the case that in a letter of 1 May 2023 the plaintiff's solicitors advised that the amount claimed was in fact only $650,000, but that is not how the statement of claim is framed.

[30] The plaintiff also submits that the amount claimed is moot in any event because the defendants were never in a position to pay it, but that overlooks the first defendant's objection that the excessive sum claimed reflects the plaintiff's true intention to intimidate the defendants and gag any future publications. The amount claimed is not moot in that context.

[31] There is also evidence that this proceeding was just part of a campaign by the plaintiff to smear the character of the first defendant. The first defendant says the campaign had at least three elements which were:

(a) the plaintiff sponsoring fake news articles about the first defendant;

(b) the plaintiff weaponising a third party to publish a recorded statement of the plaintiff, in which he made "absurd" allegations that the first defendant had sledgehammered in the plaintiff's mother's front door in Texas and threatened the lives of the plaintiff and his family; and

(c) enlisted someone representing themselves as Natalie Zaher, an Israeli lawyer, to attempt to interfere with the first defendant's grant of legal aid with extreme allegations made to Legal Aid, including invoking the 2019 Christchurch Mosque shootings and that the defendants were defrauding legal aid.

[32] The plaintiff's counsel advises the plaintiff denies the existence of any smear campaign and maintains that the first defendant directly or indirectly incited violence

against him, and says he has information to link an attack on his mother's house to associates of the first defendant. There is no evidence from the plaintiff to support those submissions. Having considered the compelling evidence provided by the first defendant, I do not accept them.

[33]    The first defendant has provided a good deal of evidence to support his contention of the existence of a smear campaign and the use of media attention generated about the defendants and others to be used to obtain what were described as "restraining orders" against them. This is consistent with the proceeding being a gagging writ.

[34]    I therefore conclude the plaintiff did bring this proceeding for an ulterior motive, never intended to take it to trial, and that the first defendant is entitled to indemnity costs.

[35]    That is not an end of the matter. While indemnity costs are determined by reference to actual costs, they must still be reasonable. In *Bradbury v Westpac Banking Corp* Harrison J said:[15]

> [209] There is nothing, however, in r 48C to suggest that the scale is relevant to an award for actual or indemnity costs. In my judgment the appropriate course for assessing what actual costs were reasonably incurred is to (1) determine whether a particular item of expenditure is reasonably incurred — for example, preparation of a statement of defence; (2) fix what would be a reasonable allocation of actual costs, measured by reference to an appropriate time taken and allowing for the significance and complexity of the category of work; and (3) quantify the costs by reference to a median hourly rate reasonably applicable to it.

[36]    The first defendant has provided copies of all the invoices that have been rendered to Legal Aid in respect of this proceeding which provide a summary of the work that was undertaken, the authors involved in the work, the hours charged and the hourly rates of the respective authors.

[37]    The plaintiff has made no submissions challenging the quantum of the first defendant's indemnity costs. They have not, for instance, made any submissions that work undertaken was unnecessary or that the hours spent are excessive. However, that

---

[15]    *Bradbury v Westpac Banking Corp*, above n 9.

does not release the Court of its responsibility to satisfy itself that the actual costs claimed are reasonable.

[38]    While the point was not taken by the plaintiff, one concern I have is that the total time that has been charged by the defendants' counsel is 187.25 hours, which appears to me to be more than would reasonably be expected in a case such as this. That said, I accept there are unusual features that take this case out of the ordinary; including that it involves a specialised area of the law, the defendants raised several technical grounds of defence which would need to be thoroughly researched, and counsel advises preparation of the defence involved viewing videos with a combined running time of nine hours, posts over multiple social media platforms and further additional comments on those posts

[39]    The difference between actual costs claimed and what would be awarded as scale costs is one factor that may be taken into account in determining if indemnity costs claimed are reasonable.[16]

[40]    I have made an assessment of scale costs on the basis that the proceeding is a category 2 proceeding and band B time allowances apply.  On that basis, the first defendant's scale costs would amount to just $13,264.50.  However, I consider there is a good argument that band C time allowance should be allowed for the preparation of the statement of defence for the reasons set out above, in which case the first defendant's scale costs would amount to $22,824.50.

[41]    Bearing in mind that the intention of the costs regime is to allow two-thirds of the costs considered reasonable for the proceeding, or any step in the proceeding, as opposed to the actual costs incurred, and the high number of hours of work the first defendant's solicitors have recorded and billed, the first defendant's claim for indemnity costs of $35,666.96 does appear to exceed what is reasonable in the circumstances of this case.

---

[16]    See for instance *Criffel Deer Ltd v ANZ Bank New Zealand Ltd* [2022] NZHC 2418 at [24].

[42]     Ultimately, I must decide what I consider is reasonable based on the information that is before me.  Standing back and looking at the matter as a whole, I consider an award of $27,500 is reasonable.

**Result**

[43]     The first defendant is awarded indemnity costs in the sum of $27,500.


_____

O G Paulsen
Associate Judge


Solicitors:
Harmans, Christchurch
Thomas Dewar Sziranyi Letts, Lower Hutt